## Walker v. Crockett.

(Decided April 21, 1922.)

### Appeal from Whitley Circuit Court.

1. Parent and Child—Custody of Child.—Under section 2016, Kentucky Statutes, if one parent of an infant is dead the surviving parent has the sole right to the custody of the infant, if he or she be suited to the trust.

2.  Parent and Child—Custody of Child.—The only question under
    that statute is, in such a case, whether the surviving parent is
    a suitable person to have such custody, and in the absence of
    convincing evidence to the contrary the statute fixes the right
    of the parent to such custody.
3.  Parent and Child—Custody of Child.—The statute recognizes the
    natural right of a surviving parent to the sole custody of an in-
    fant child, but, having always in view the interest of the child,
    requires of such parent that he or she shall be suited to the sacred
    trust, and reserves the right where the parent is not so suited
    to change its custody even to the extent of committing it to a
    stranger.
4.  Parent and Child—Custody of Child.—The burden of showing the
    unfitness of the surviving parent, in such a controversy, is upon
    the one seeking to deny such parent the custody of the child.
5.  Parent and Child—Custody of Child.—It is only the surviving
    parent who is authorized by the statute to name a guardian for
    the custody of an infant, as it would be contrary to the statute to
    hold that one parent might give away by will or otherwise the
    custody of a child as against the other parent.
6.  Parent and Child—Custody of Child.—A surviving parent is en-
    titled to the custody of an infant as against the claims of a stat-
    utory guardian, the latter having only the right to the possession,
    care and management of the ward's estate.

TYE & SILER for appellant.

H. C. GILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

This equitable action by appellee against appellant
involves the right to the custody of the infant son of ap-
pellee, Raymond Walker, appellee being the mother and
appellant the paternal grandfather of the infant.

The appellee and Ancil Walker, the son of appellant,
were married and the infant Raymond Walker was the
result of the marriage. Ancil Walker died and appellee
and her infant child went to live with and remained with
appellant at his home for about two years and a half
when because of some difference between appellee and
appellant's wife they changed their place of residence.
Thereafter she married Thomas Crockett and retained
the custody of her child until about August, 1919, when
appellant secured such custody.

Ancil Walker, the first husband of appellee, was killed
in a railroad accident and his estate collected from the

railroad company, a sum in damages which, by agreement, was equally divided between the widow and the child. For some reason the widow did not qualify as guardian of the infant child, but one Estes qualified as such guardian and took possession of the child's portion of the recovery from the railroad company.

In August, 1919, the guardian Estes, apparently with the cooperation of appellant, secured the custody of the child and turned it over to appellant and this suit is the result.

The plaintiff in her petition alleges that she is the mother of the infant and that she is a woman of good character and fitted by nature and experience to properly rear and train the child; that she has a good home and good surroundings in which to rear the child and is able and willing to provide him a good home and proper support and give him proper training and education, and that it is to the best interests of the child that she should have the care, custody and control of him.

The answer denied the fitness of the plaintiff by nature and experience to properly rear or train the infant or that the infant would be in good surroundings if committed to her custody, or that she is able to provide him a good home or proper support or training or education, and the cause was submitted, after taking evidence, solely on these issues.

The chancellor adjudged the custody of the infant to its mother, the plaintiff, and from that judgment the grandfather has appealed.

The evidence amply supports the judgment of the chancellor. It shows without contradiction that appellant is a woman of good character, that she is devoted to her child and that she has used reasonable efforts to rear and train him so as to make of him a useful citizen, and that she has endeavored to guide him into the paths of rectitude. It further shows that she has at times found it necessary to inflict corporal punishment upon the child, because he was guilty of such conduct as called for and demanded infliction of such punishment, to the end that he might thereafter refrain from his improper practices. While the infant was living with his mother and his stepfather Crockett, the latter at times found it necesary to correct him, and the claim of appellant is that the stepfather was guilty of brutal and inhuman treatment of the child, and that the stepfather was an immoral man of

bad habits and that his example might be injurious to the child. It is unnecessary, however, to go into this latter phase of the evidence although the lower court in its judgment seems to have discredited it; for it is made to appear upon this appeal that since the entry of the judgment in the lower court the stepfather, Thomas Crockett, has died and even if the evidence in the first place on this phase of the case would have authorized a reversal, the death of Crockett has eliminated that question.

The primary and controlling consideration in all cases involving the right to the custody of infants is—what is to the best interest of the infant, and this consideration is always the uppermost one in the mind of a court. If deemed necessary in the interest of the infant to take it from the custody of its parent or parents such action will be taken, but ordinarily the right of a parent or parents to the custody of an infant child is recognized by the law, and in order to justify a court in placing the custody of an infant in other hands it must be clearly shown that it is to the interest of the child. In other words, it is a right of the parents of an infant to its joint custody if they both be living, and if only one be living, such survivor has the sole right to the custody if he or she be suited to the trust. The whole policy of the law is well and accurately stated in section 2016, Kentucky Statutes, wherein it is said:

"That the father and mother shall have the joint custody, nurture and education of their infant child, or children, and in the event of the death of either one of the parents, father or mother, the survivor, if suited to the trust, shall have the custody, nurture and education of such infant child or children, and may, by will, appoint (a) guardian to his or her infant child, or children, during its minority or for any less period, and may appoint the guardianship of the infant's estate to one and the custody, nurture and education of the infant to another. . . ."

Under the provisions of this section the only question is, where there is one surviving parent of an infant and its custody is involved, whether that parent is a suitable person to have such custody, and in the absence of convincing evidence to the contrary its provisions fix beyond question the right to such custody. The right of the surviving parent is superior to the rights of all others, and the only thing which the law requires of the surviving parent is that he or she shall be one suited to the trust

of rearing, training and educating such infant. The statute recognizes the natural right of the surviving parent to the custody of an infant child, but in the interest of the child, requires of that parent that he or she shall be suited to the sacred trust, and reserves the right where the parent is not so suited, having always the paramount interest of the child in view, to change its custody even to the extent of taking it from the parent and committing it to a stranger.

The statute, insofar as it has reference to the custody of a surviving parent, only re-states the equitable rule, long recognized, that a parent is the natural custodian of an infant child, but that always the paramount question in such cases is, what is to the best interest of the infant? In the case of Rallihan v. Motschmann, 179 Ky. 180, this court had under consideration a controversy involving the custody of an infant between its surviving father and the maternal grandparents, and the court, after quoting the section of the statute above referred to, and upon a showing that the father, although then a nonresident of this state, was a suitable person to have the care and custody of the infant, awarded the custody to the father and explicitly held that the burden to show the unfitness of a surviving parent was upon the one seeking to deny to such parent the custody of the child.

It was likewise held in that case that it is only the surviving parent who is authorized by the statute to name a guardian for the custody of an infant, or for his estate, and pointed out that it would be contrary to the statute to hold that one parent could give away by will the custody of a child as against the other parent.

It has also been pointed out by this court, in considering this and other statutes, in the case of Mason v. Williams, 165 Ky. 331, that a surviving parent is entitled to the custody of an infant child as against the claims of a statutory guardian, who only has the right to the possession, care and management of the ward's estate.

We are convinced, therefore, that the chancellor correctly interpreted the statute, and under the evidence properly awarded the custody of the infant to the mother.

Judgment affirmed.